IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHARLES LEE MOSIER, SR., | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-355-O |
| | § | |
| BOBBY LUMPKIN, Director, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Charles Lee Mosier, Sr., ("Mosier"), a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ-CID), against Bobby Lumpkin, director of that division, Respondent. After considering the pleadings and relief sought by Mosier, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

    **A.**     **Procedural**

Mosier challenges his custody pursuant to a judgment and sentence of the 432nd Judicial District Court, Tarrant County, Texas in cause number 1397476D. See Pet. 1-3, ECF No.1; Clerk's R. at 160-61, ECF No. 25-13. Mosier was charged by indictment with continuous sex abuse of a child under 14 years old. Clerk's R. at 7-8, ECF No. 25-13. A jury found Mosier guilty and he was sentenced to 50 years' imprisonment on April 15, 2016. Clerk's R. at 160, ECF No. 25-13.

Mosier appealed and on June 1, 2017, the Second Court of Appeals affirmed Mosier's conviction. *Mosier v. State*, 02-16-00159-CR, slip op. (Tex. App.—Fort Worth 2017, pet. ref'd).

Mosier filed a petition for discretionary review (PDR) on July 24, 2017. *Mosier v. State*, PDR No. PD-0791-17, Original PDR (Tex. Crim. App. 2017). The Texas Court of Criminal Appeals ("TCCA") refused his PDR on September 20, 2017. *See Mosier*, PDR No. PD-0791-17; Pet. 3, ECF No. 1.

Mosier's state application for writ of habeas corpus challenging his conviction was file-stamped on December 26, 2018. SHR[1] writ received July 2, 2019, at 15, ECF No. 25-40. Mosier filed the instant federal petition on April 23, 2019, while his state writ application was still pending. Pet. 4, 49, ECF No. 1; *see generally Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (a federal petition is filed on the date it is placed in the prison mail system). On May 31, 2019, this Court granted Mosier's motion for stay and abeyance. ECF No. 8. During the state writ proceedings, the court adopted the state's proposed extensive findings of fact and conclusions of law. SHR, supp. recd. 12-11-2019, at 4-23, ECF No. 25-37. Then, on September 23, 2020, the TCCA denied Mosier's state writ application without written order on the findings of the trial court without a hearing and on its own independent review of the record. SHR at Action Taken Sheet, ECF No. 25-23. Mosier subsequently filed a request to reopen this § 2254 proceeding, which the Court granted on May 4, 2021. ECF Nos. 13, 14. The Respondent then filed a response along with the extensive state court record, and Mosier filed a reply. ECF Nos. 23, 25, and 26.

**B.     Factual Overview**

The state court of appeals summarized the facts:

In 2003, four-year old Alex and one-year old Amy were placed in the care of Wendy, their mother's aunt, and Appellant, Wendy's husband, while Child Protective Services (CPS) conducted an investigation of abandonment and neglect

---

[1] "SHR" refers to the record of Petitioner's state habeas proceeding in WR 90,980-01.

allegations against their mother, Macy. Although the record is unclear, it appears that at some point the siblings were permanently placed there, and over the years, the children came to consider their great-aunt and Appellant as their parents. At trial, Amy referred to them as stepparents and called Wendy "Mom." Both children testified that they called Appellant "Dad."

When Amy was 13, both she and Alex moved out of Appellant's house and began living with their mother again. While the record is clear that both children wanted to move to their mother's house, nothing in the record indicates what reason they provided to the adults to explain their motivation to move. However, at trial Amy testified that she wanted to move because she "was tired" of "the same old thing." When asked to clarify what she was tired of that caused her to want to move out, Amy testified, "getting molested." Alex testified that even though he did not have a "good bond" with his mother, he told Wendy and Appellant that he wanted to move in with her, and they both agreed to let him go. Alex did not specifically attribute his reason for wanting to leave Wendy and Appellant's home to anything other than "I guess I just got tired of living there."

About a month after they had moved, Amy revealed to her maternal aunt Violet that she had been sexually abused, and Violet told Macy. Appellant was charged with one count of continuous sexual abuse of a child under 14 based upon allegations that, on or about September 2, 2007, through August 4, 2012, (1) he caused his penis to contact Amy's sexual organ "and/or" caused his penis to contact Amy's mouth, and (2) he caused his penis to contact Alex's mouth. See Tex. Penal Code Ann. § 21.02.

*Mosier*, slip op. at 2-3 (footnotes omitted).

## II.     ISSUES

Mossier alleges ten separate grounds for relief. Pet. 6-46, ECF No. 1. Because he alleges that his trial counsels[2] were ineffective in seven of those grounds, the Court will consider those claims as one ground with separate sub-claims (a-g), consistent with the organization of, and response to, the claims by the Respondent. Response 2, ECF No. 23.

Ground 1. His appellate counsel was ineffective when he failed to brief that the trial

---

[2] Mosier was represented during trial proceedings by both T. Richard Alley and James Wilson. Alley died prior to Mosier's filing of his state application for writ of habeas corpus.

> court erred, pursuant to rule 403, to admit evidence about the alleged extraneous offenses related to his sister, and that was harmful since the prosecutor asked the jury to "punish" him for the extraneous offense.
>
> Ground 2. He was denied a meaningful appeal in violation of the 14th Amendment when the state appellate court failed to review his alternative issue for relief.
>
> Grounds 3(a-g). His trial counsels were ineffective when they failed to:
>
>> a. object at sentencing to the State's closing argument which asked the jury to "punish" him for an extraneous offense allegation;
>>
>> b. object to the State's expert forensic child interviewer which bolstered the victim's testimony when the expert did not have any concerns about coaching or fabrication during the interviews;
>>
>> c. object on confrontation grounds to the testimony of the nurse manager in lieu of the nurse who performed the Sexual Assault Nurse Examiner ("SANE") exam;
>>
>> d. object under several state statutory and evidentiary rules to prevent the jury from hearing evidence of the SANE exam report;
>>
>> e. present to the jury evidence that it was his son, not him, who abused the victim;
>>
>> f. present the correct theory to the jury – that the victims fabricated the stories of abuse so that they could move in with their birth mother; and
>>
>> g. expose multiple prior inconsistent statements of both victims' allegations of abuse.
>
> Ground 4. The cumulative effect of trial counsels' errors resulted in a violation of the Sixth Amendment.

Pet. 1-46, ECF No. 1. The Court's review of the application for writ of habeas corpus filed in the state court and the petition for writ of habeas corpus filed in this § 2254 proceeding, reveals that Mosier recited virtually the same grounds for relief and virtually the same extensive supporting facts in both documents. *Compare* SHR, writ received, July 2, 2019 at 15-42, ECF No. 25-40, *with*

Petition 1-49, ECF No. 1.

### III. RULE 5 STATEMENT

Respondent believes that Mosier has exhausted his state-court remedies as to the claims raised, that his petition is timely filed, and that the petition is not subject to the successive-petition bar. Resp. 5-6. ECF No. 23.

### IV. DISCUSSION

#### A. AEDPA Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Finally, when the Texas Court of Criminal Appeals, the state's highest criminal court,

refuses discretionary review or denies state habeas-corpus relief without written order, opinion, or explanation, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Harrington,* 562 U.S. at 100; *Singleton v. Johnson,* 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision" providing particular reasons, both legal and factual, and "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* — U.S. —, 138 S. Ct. 1188, 1192 (2018).

### B. Claim that He was Denied a Meaningful Appeal (Ground 2)

All of Mosier's grounds, except ground two, assert or relate to claims of ineffective assistance of both Mosier's trial and appellate attorneys. Pet. 6-10, 12-46. ECF No. 1. Thus, before the Court considers all of the ineffective assistance grounds, the Court will first consider Mosier's ground two, that he was denied a meaningful appeal in violation of his right to due process when the state appellate court failed to review an alternative ground asserting that the admission of extraneous offense evidence during punishment was error. Pet. 10-12, ECF No. 1.

In the underlying state writ proceedings, the TCCA denied Mosier relief on this ground. SHR, Action Taken Sheet, ECF No. 25-23; SHR, supp. recd. 12-11-2019, at 12, ECF No. 25-37. In denying this claim, the state court held that:

> 22. Because of the "law of the case" doctrine, holdings of the appellate court, including erroneous ones, are ordinarily not subject to review in a subsequent collateral proceeding once the issue has been finally resolved on direct appeal. *Ex parte Schuessler*, 846 S.W.2d 850, 852 (Tex. Crim. App. 1993).
>
> 23. Applicant has failed to prove that the Second Court of Appeals' opinion is reviewable in this proceeding.

SHR, supp. recd. 12-11-2019, at 12, ECF No. 25-37.

Mosier must show that this decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Mosier has not done this. Instead he has merely provided the same allegations from his previous state application for writ of habeas corpus in the instant petition without attempting to show an unreasonable application of federal law as determined by the Supreme Court. Mosier also fails to show that the state court's denial of his claim "[is] based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). Mosier is also not entitled to relief because he cannot show "that the state court's ruling on the claim being presented in federal court [is] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Harrington*, 562 U.S. at 103.

Thus, as the state court's denial of relief on Mosier's second ground was reasonable, his listing of that same ground must be denied in this § 2254 proceeding.

    **C.**    **Claims of Ineffective Assistance of Counsel**

        1.    <u>Standard of Review: *Strickland v. Washington*, "Doubly Deferential" Review.</u>

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, amend. XIV; *Evitts v. Lucey,* 469 U.S. 387, 393-95 (1985); *Strickland v. Washington,* 466 U.S. 668, 688 (1984). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington,* under which a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for

counsel's deficient performance the result of the proceeding would have been different. *Strickland,* 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' determination involved an unreasonable application of *Strickland* in light of the state-court record, a substantially higher threshold. *Harrington*, 562 U.S. at 100-01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v. Cone,* 535 U.S. 685, 698-99 (2002). As the Supreme Court has explained, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

When reviewing an ineffective-assistance claim by appellate counsel, a petitioner must also satisfy the two-pronged *Strickland* test. *See Smith v. Robbins*, 528 U.S. 259, 286 (2000) (proper standard for evaluating appellate counsel is *Strickland v. Washington*). Thus, a petitioner must demonstrate counsel was deficient, and that the deficiency prejudiced his case. *Strickland*, 466

8

U.S. at 687. Counsel's assistance becomes ineffective when counsel's errors are prejudicial, in that there is a reasonable probability that but for the error the ultimate result would have been different. To prove prejudice, a petitioner must show that but for counsel's deficient performance "he would have prevailed on appeal." *Smith*, 528 U.S. at 285.

To demonstrate deficiency on an allegation of failure to advance certain issues on appeal, a petitioner must show that "counsel unreasonably failed to discover [and raise] nonfrivolous issues." *Id*. Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Thus, it is possible that an ineffectiveness claim may be "based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id*. (citation omitted). Indeed, in considering the deficient performance prong, an attorney's decision not to pursue a certain claim on appeal after considering the claim and believing it to be without merit falls within the "wide range of professionally competent assistance" demanded by *Strickland*. *Smith v. Murray*, 477 U.S. 527, 536 (1986).

### 2. Mosier's Appellate Counsel was not Ineffective. (Ground One)

In his first ground for relief, and initial claim of ineffective assistance, Mosier argues that his appellate counsel was ineffective when he failed to raise a Rule 403 error claim for allowing extraneous offense evidence at sentencing. Pet. 6-10, ECF No. 1.

In an affidavit to the state court, Mosier's appellate counsel, Paul Francis, responded to the allegation that he provided ineffective representation. SHR at 1082-89, ECF No. 25-42. Counsel explained that:

> In deciding to focus on the error of extraneous offense testimony during the

guilt-innocence phase I concluded that given the state of the law and the record, as set out in the brief, it had the greatest potential for appellate relief if the defendant focused entirely on the guilt-innocence portion of the trial and did not attempt a scattershot approach. It was my judgment that if an appellate court was going to grant relief it would be on the guilt-innocence use of extraneous offense testimony given the prejudicial and inflammatory nature of other allegations of sexual impropriety, particularly from 30 years earlier. I wanted to spend the entire argument on that point. By doing that I managed to persuade the court of appeals to find error, but unfortunately not harmful error. I was unable to thereafter convince the remainder of the court of appeals to grant *en banc* review, and not able to persuade the Texas Court of Criminal Appeals to re-evaluate the Fort Worth Court of Appeals' analysis.

In addition to not wishing to lose focus I did not believe there was any reasonable likelihood of prevailing on an appellate argument regarding extraneous offense evidence during the punishment phase of the trial.

Tex. Crim. Proc. Code Ann. § 37.07 Sec. 3(a)(1) provides that:

"Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act."

In assessing punishment[,] the jury may consider all of the evidence adduced at trial on guilt or innocence. *Duffy v. State*, 567 S.W.2d 197, 208 (Tex. Crim. App. 1978)[.] It is not necessary to reoffer the evidence. *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003)[.] There is case law, albeit unpublished, to the effect that failure to object to admission of reoffered evidence at punishment is a waiver of objection to the admission of it at the punishment phase. *See Faris v. State*, 06-12-00019-CR, 2012 WL 4459598, at *3 (Tex. App.—Texarkana Sept. 26, 2012, pet. ref'd) (Not designated for publication)[.] There was no objection at trial to the reoffer shown in the record during the punishment phase. There was no objection to the pen packet. The stipulation was signed by both the defendant personally and his trial attorney.

In addition. Article 37.07 § 3(a)(1) allows for admission of any evidence the trial court deems relevant to sentencing. This includes extraneous-offense evidence. Because there are no discrete fact issues at the punishment phase of a non-capital trial, the definition of 'relevant,' as stated in Rule 401 of the Texas Rules of Evidence, does not readily apply to Article 37.07. What is 'relevant' to the punishment determination is simply that which will assist the fact finder in deciding the appropriate sentence in a particular case. When the jury assesses punishment, relevance is simply a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case. *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008).

When presented with an appropriate objection, the trial court has the responsibility to determine the threshold issue of whether an extraneous offense is relevant. *Arzaga v. State*, 86 S.W.3d 767, 781 (Tex. App.—El Paso 2002, no pet.). The trial court satisfies its responsibility by making an initial determination that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offenses. *Id.* This threshold determination is not a finding by the court that the State has proved an extraneous bad act beyond a reasonable doubt, but is instead a finding that sufficient evidence exists from which a jury could reasonably so find. *Id.*

Here there was no objection to the reoffer of the evidence during punishment, but even so, the offer itself gave the trial court the opportunity to make a threshold determination, which it did by admitting the reoffered evidence. The jury was instructed regarding the necessity of finding any extraneous offense beyond a reasonable doubt in order to consider it.

Unlike the guilt-innocence phase where inappropriately admitted evidence may push the jury over the threshold separating a guilty from a not guilty verdict, the question during punishment requires the jury to agree on punishment on a sliding scale, between 25 years to 99 years in this case.

The determination to admit evidence is reviewed under an abuse of discretion standard.

Factoring in the above, my understanding of the law, the nature of the allegations that had been properly admitted (without considering the extraneous offense testimony) and the fact that the jury at punishment was looking at a 25-99 year range of punishment, and arrived at a 50 year sentence, which while very high, could have been even higher, it was and still is my opinion that the proper focus during appeal was on pointing out that the admission of the extraneous offense testimony during the guilt-innocence phase was harmful error, and the best

11

>approach to obtaining any relief on appeal, and would have the most impact and greatest potential for success, when presented in that manner. I saw no realistic possibility that raising that issue in an attack on the sentence would result in any relief, and would take the focus off of what, in my opinion, was a strong position that the trial court had committed harmful error by admitting into evidence the extraneous offense testimony during the guilt-innocence phase, particularly the 30 year old allegation, which caused the jury to return a verdict of guilty.
>
>The fact that the court of appeals was not convinced that there was harm, a finding that was not set aside by rehearing or en banc reconsideration, or the Texas Court of Criminal Appeals, militates against an assertion that there would be a more favorable outcome of making the same argument regarding the punishment phase of the trial and the jury's determination of the appropriate sentence to impose, even if such argument could be considered as preserved.
>
>I did not provide ineffective assistance by failing to brief a point of error that admission of extraneous offense evidence during punishment was error.

*Id.* at 1084-88 (footnote omitted).

In denying Mosier's ineffective-assistance-of-appellate-counsel claim, the state habeas court adopted the state's proposed findings and conclusions of law. SHR, supp. recd. 12-11-2019, at 22-23, ECF No. 25-37. The state court found Francis's affidavit "credible and supported by the record." *Id.* at 6, ¶ 8. This factual determination is entitled to a presumption of correctness which Mosier has failed to rebut with clear and convincing evidence. 28 U.S.C. § 2254(e); *see Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."); *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001).

The court found that "Mr. Francis did not raise on direct appeal that the extraneous offense was improperly admitted during the punishment phase, in part, because it was reoffered and readmitted without objection." SHR, supp. recd. 12-11-2019, at 6, ¶ 6, ECF No. 25-37. Similarly,

the court found that "Mr. Francis did not raise on direct appeal that the State's closing argument during the punishment phase was improper, in part, because there was no objection to the State's closing argument." *Id.* at 6, ¶ 5. In addition, the court determined that there was "no credible evidence that Mr. Francis' representation fell below an objective standard of reasonableness[,]" and that there was "no credible evidence that the outcome of the appellate proceeding would have been different but for the alleged misconduct." *Id.* at 6, ¶¶ 9-10.

> Then, in its conclusions of law, the state court held:
>
> 11. Whether the extraneous offense evidence was improperly admitted during the punishment phase was not properly preserved for review.
>
> 12. Because Applicant's issue regarding the extraneous offense evidence during the punishment phase was not preserved for review, counsel properly did not raise it on direct appeal.
>
> 13. Whether the State's closing argument during the punishment phase was improper was not properly preserved for review.
>
> 14. Because Applicant's issue regarding the State's closing argument was not preserved for review, counsel properly did not raise it on direct appeal.
>
> 15. Applicant has failed to prove that his appellate attorney's representation fell below an objective standard of reasonableness.
> . . .
>
> 18. Applicant has failed to show that there is a reasonable likelihood that the outcome of the appellate proceeding would have been different had appellate counsel raised additional grounds on direct appeal.
>
> 19. Applicant has failed to show that there is a reasonable likelihood that, but for the alleged acts of misconduct, the result of the appellate proceeding would have been different.
>
> 20. Applicant has failed to prove that he received ineffective assistance of appellate counsel.

*Id.* at 11-12, ¶¶ 11-15, 18-20.

Because Mosier fails to demonstrate any meritorious claims that his appellate attorney should have raised, he has failed to meet his burden to show that appellate counsel was ineffective. *Smith*, 528 U.S. at 286 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Mosier also fails to show that the complained of conduct was deficient or that, but for counsel's errors, his appeal would have prevailed. *See Smith*, 528 U.S. at 286.

The state court's denial of relief on this claim was reasonable and Mosier has not overcome the "doubly" deferential assumption in favor of the state court denial. *Knowles*, 556 U.S. at 123. Therefore, Mosier's ground one claiming that his appellate counsel was ineffective must be denied.

3.  Mosier's Trial Attorneys were Not Ineffective. (Grounds 3(a)-(g))

Mosier argues that his trial attorneys were ineffective when they: (a) failed to object to the prosecutor's reference to an extraneous offense during the punishment argument, (b) failed to object to the state's expert child interviewer "bolstering" the victims testimony; (c) failed to lodge a Sixth Amendment objection to the admission of the SANE exam report, (d) failed to object to specific information contained within the SANE exam report, (e) failed to present evidence that the crime was committed by his son, (f) presented the wrong theory of the case to the jury, and (g) failed to confront the victims regarding inconsistent statements. ECF No. 1 at 12-42.

In an affidavit to the state court, trial attorney James Wilson disputed Mosier's allegations. SHR writ received July 2, 2019, at 1150-54, ECF No. 25-42. With regard to the claim that trial counsel failed to object to the prosecutor's improper reference to an extraneous offense during closing argument and punishment, Wilson's affidavit provided:

> Before trial[,] the court held a[n] Art. 38:37 hearing on the admissibility of a thirty[-]year[-]old allegation against Mr. Mosier. The extraneous act alleged Mr. Mosier had sexually molested his sister in Arkansas years before and she had never

14

> reported it. The State wanted to prove up this act in the State's case-in-chief. Mr. Alley objected to this being used under several grounds most notably, Rules 403, 404, and that Art. 38:37 was constitutionally facially invalid. He was overruled then and later on the same objections. With the trial court's ruling in place the prosecutor was allowed to bring up the extraneous offense in the case-in chief as well as in the closing argument without further objection by defense counsel. It should be noted that the Court of Appeals later ruled that the trial court abused its discretion by allowing the extraneous act in, but that the error was harmless. Mr. Alley correctly and timely objected and accordingly preserved error.

*Id.* at 1151-52.

The state court also found that Mosier's counsel "objected to the extraneous offense evidence both at the article 38.37 hearing and later when it was admitted during the guilt/innocence phase of trial." SHR, supp. recd. 12-11-2019, at 7, ECF No. 25-37. His counsel also "objected to the extraneous offense evidence under Rules 403, 404, and that article 38.37 was facially invalid." *Id.* at 7, ¶ 18.

In response to Mosier's claim that his counsel failed to object to "bolstering," attorney Wilson stated:

> The State called a Forensic Interviewer as a witness. Charity Henry testified as to her training and experience. Ms. Henry testified that she had interviewed the children involved in this case. Further Ms. Henry basically testified that based [on] her training and experience she had observed the mannerisms and actions of the children to help her decide if they had been coached. I assume Mr. Alley did not object to her observation because she was called as an expert witness, and her opinions were not considered bolstering. Afterwards Mr. Alley cross- examined Ms. Henry about specific details of her observations.

SHR, writ received July 2, 2019, at 1152, ECF No. 25-42.

Wilson also explained that there was no Sixth Amendment objection to the admission of the SANE exam report, nor an objection to specific information contained within the SANE exam report:

15

> The SANE nurse that examined the children in this case was not available for trial. The SANE exam itself was allowed into evidence as a business record. The State brought in Donna Wright, who was the supervisor of the original SANE nurse, to testify as to the results of the SANE exam. Ms. Wright was not allowed nor did she go into any of the medical history of the children or anything that the children might have said to the original SANE nurse. She merely testified to the medical conclusions of the exam. The SANE exam was admitted under the business records exception to the Rules of Evidence and therefore was not a violation of the confrontation clause as claimed by the Applicant. Furthermore Mr. Alley cross examined Ms. Wright thoroughly and clarified that the medical findings were broad and not certain as to time or manner.
>
> . . .
>
> The information in the SANE report was made available to defense counsel in accordance with the Tarrant County District Attorneys open file policy. The only evidence brought out by Ms. Wright was that there was a tear to the hymen of the female child. The diagnosis indicated a tear in the hymen due to blunt force trauma. No history or any verbal representations from either child to the SANE nurse during the exam was offered in to evidence. It was established on cross examination that it was not possible to determine <u>HOW</u> or <u>WHEN</u> this tear occurred, or <u>WHO</u> inflicted it. Since medical conclusions are allowed under these circumstances and defense counsel was allowed to cross examine the State's witness, the testimony of Ms. Henry was admissible.

*Id.* at 1152-53.

Wilson also refuted Mosier's allegations that his trial attorneys did not present evidence that the crime was committed by his son, the wrong theory of the case to the jury, and failing to confront the victims regarding inconsistent statements:

> I did indeed meet at my office with Mr. Mosier shortly before trial. At that meeting I received an updated list of witnesses from the Applicant that he wanted called on his behalf. Mr. Alley never stated that the results of the SANE exam would not be admitted. Trial strategy was discussed, and the main defensive strategy talked about at the time was to bring out the inconsistencies in the statements of the children. These inconsistencies were in fact brought out in trial by Mr. Alley on cross examination, as well as in closing argument. A full, complete, and thorough examination of the States' witnesses was conducted by Mr. Alley in an effort to develop as much relevant, favorable evidence to the Applicant as might be reasonably expected under the circumstances. The Applicant therefore was not denied effective assistance counsel.

16

> At trial we were not allowed to discuss the activities or involvement of Charles Lee Mosier, Jr. A State's Motion in Limine barring any such discussion was ruled on before trial. There was never a point in this trial where it became relevant or possible for defense counsel to bring in Charles Lee Mosier Jr.'s, activities. There was no admissible evidence of an alternate perpetrator that defense counsel could have adopted in this case.

*Id.* at 1153-54.

In denying Mosier's ineffective-assistance-of-trial-counsel claims, the state court found Wilson's affidavit credible and supported by the record. SHR, supp. recd. 12-11-2019, at 9, ¶ 39, ECF No. 25-37. Again, because the state court made explicit and implicit credibility choices in favor of Mosier's attorney, the statements in his affidavit are presumptively correct facts under 28 U.S.C. §2254(e). *Neal*, 239 F.3d at 696; *Valdez*, 274 F.3d at 948 n.11. Ultimately, the state court held that Mosier failed to demonstrate that his counsel was deficient. SHR, supp. recd. 12-11-2019, at 15–18, ECF No. 25-37. The court also concluded that Mosier did not show that he was prejudiced by his counsel's alleged deficiencies. *Id.*

In the state writ application proceeding, the TCCA denied Mosier relief on all of his ineffective-assistance-of-trial-counsel claims. SHR, Action Taken Sheet, ECF No. 25-23; SHR, supp. recd. 12-11-2019, at 4-19, 22, ECF No. 25-37. Mosier must show that this decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As with his other grounds, Mosier has merely provided the same allegations from his previous state application for writ of habeas corpus in the instant petition without attempting to show an unreasonable application of federal law as determined by the Supreme Court. Mosier also fails to show that the state court's denial of his claims "[is] based on an unreasonable determination of the facts in light

17

of the evidence." 28 U.S.C. § 2254(d). Again, Mosier has not overcome the "doubly" deferential assumption in favor of the state court's denial. *Knowles*, 556 U.S. at 123. Thus, the state court's denial of relief on all Mosier's claims that his trial attorneys provided ineffective assistance was reasonable, and Mosier has not shown otherwise. Thus, all of Mosier's claims of ineffective assistance by trial counsel, Grounds 3(a-g), must be denied.

4. <u>Claim of Cumulative Ineffective Assistance of Counsel (Ground 4)</u>

Mosier alleges in his final ground for relief that the cumulative effect of trial counsels' errors deprived him of effective assistance of counsel. Pet. 42-46, ECF No. 1.

As demonstrated above, Mosier has failed to show that his trial attorneys were deficient or that he was prejudiced by counsels' performance. Because all of Mosier's ineffective- assistance-of-counsel claims lack merit, he has failed to show that he was denied the effective assistance of counsel as a result of cumulative error. *United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992) ("Because we find no merit to any of Moye's arguments of error, his claim of cumulative error must also fail."). Accordingly, relief is not available under the cumulative error doctrine. *See United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) (no cumulative error where defendant failed to identify single error in jury selection); *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000) (petitioner who failed to demonstrate any error during trial could not establish cumulative error).

Therefore, the state court's denial of relief on Mosier's cumulative-error ground was reasonable and he has not overcome the "doubly" deferential assumption in favor of the state court denial of the claim *See Knowles*, 556 U.S. at 123. Thus, Mosier's final ground for relief must be denied.

## V. CONCLUSION

For all of the reasons discussed herein, Charles Lee Mosier. Sr.'s petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, for the reasons discussed, a certificate of appealability is **DENIED**.

**SO ORDERED** on this **13th day** of **January, 2022.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE